## EXHIBIT A

## DEFINITIONS

1. "The '753 patent" means U.S. Patent No. 6,648,753 B1.

2. "The '354 patent" means U.S. Patent No. 6,692,354 B2.

3. The "patents-in-suit" means the '753 patent and/or the '354 patent.

4. "GTECH" means defendant GTECH Corporation and includes any and all of its predecessors, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

5. "Scientific Games" means plaintiff Scientific Games Royalty Corporation and includes any and all of its predecessors, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

## TOPICS FOR EXAMINATION

1. The development, design, operation and performance of any group participation wagering games offered by GTECH to or on behalf of any state or multi-state lottery agency, including any lottery or keno games with a bonus or multiplier feature.

2. Any group participation wagering games offered by GTECH to or on behalf of the Rhode Island lottery, including Powerball Power Play and Keno Plus, including:

   a. the development, design, operation and performance of the games;

   b. any bids, proposals, responses to requests for proposals, and/or other offers by GTECH concerning the games;

   c. any communications between GTECH and the Rhode Island lottery concerning the games;

   d. any descriptions, specifications, evaluations, test reports, analyses or technical documentation concerning the games; and

   e. any agreements or contracts pursuant to which GTECH provides the games to or on behalf of the Rhode Island lottery.

  3. Any group participation wagering games offered by GTECH to or on behalf of the New York lottery, including Quick Draw Extra, including:

   a. the development, design, operation and performance of the games;

   b. any bids, proposals, responses to requests for proposals, and/or other offers by GTECH concerning the games;

   c. any communications between GTECH and the New York lottery concerning the games;

   d. any descriptions, specifications, evaluations, test reports, analyses or technical documentation concerning the games; and

   e. any agreements or contracts pursuant to which GTECH provides the games to or on behalf of the New York lottery.

  4. Any group participation wagering games offered by GTECH to or on behalf of the Texas lottery, including Mega Millions Megaplier, including:

   a. the development, design, operation and performance of the games;

   b. any bids, proposals, responses to requests for proposals, and/or other offers by GTECH concerning the games;

   c. any communications between GTECH and the Texas lottery concerning the games;

4

    d. any descriptions, specifications, evaluations, test reports, analyses or technical documentation concerning the games; and

    e. any agreements or contracts pursuant to which GTECH provides the games to or on behalf of the Texas lottery.

  5. Any group participation wagering games offered by GTECH to or on behalf of the Michigan lottery, including Club Keno Kicker, including:

    a. the development, design, operation and performance of the games;

    b. any bids, proposals, responses to requests for proposals, and/or other offers by GTECH concerning the games;

    c. any communications between GTECH and the Michigan lottery concerning the games;

    d. any descriptions, specifications, evaluations, test reports, analyses or technical documentation concerning the games; and

    e. any agreements or contracts pursuant to which GTECH provides the games to or on behalf of the Michigan lottery.

  6. Any group participation wagering games offered by GTECH to or on behalf of the Wisconsin lottery, including Powerball Power Play, including:

    a. the development, design, operation and performance of the games;

    b. any bids, proposals, responses to requests for proposals, and/or other offers by GTECH concerning the games;

    c. any communications between GTECH and the Wisconsin lottery concerning the games;

    d. any descriptions, specifications, evaluations, test reports, analyses or technical documentation concerning the games; and

    e. any agreements or contracts pursuant to which GTECH provides the games to or on behalf of the Wisconsin lottery.

  7. Any group participation wagering games offered by GTECH to or on behalf of the North Carolina lottery, including Powerball Power Play, including:

    a. the development, design, operation and performance of the games;

    b. any bids, proposals, responses to requests for proposals, and/or other offers by GTECH concerning the games;

    c. any communications between GTECH and the North Carolina lottery concerning the games;

    d. any descriptions, specifications, evaluations, test reports, analyses or technical documentation concerning the games; and

    e. any agreements or contracts pursuant to which GTECH provides the games to or on behalf of the North Carolina lottery.

  8. Any group participation wagering games offered by GTECH to or on behalf of the District of Columbia lottery, including Powerball Power Play and Keno Spin, including:

    a. the development, design, operation and performance of the games;

    b. any bids, proposals, responses to requests for proposals, and/or other offers by GTECH concerning the games;

    c. any communications between GTECH and the District of Columbia lottery concerning the games;

   d. any descriptions, specifications, evaluations, test reports, analyses or technical documentation concerning the games; and

   e. any agreements or contracts pursuant to which GTECH provides the games to or on behalf of the District of Columbia lottery.

  9. The facts and circumstances surrounding GTECH's first awareness of the '753 patent, including the earliest date of awareness, any actions taken by or on behalf of GTECH after becoming aware of the patent (including any attempts to design around the '753 patent), and an identification of all persons involved in such awareness and/or in any actions taken by or on behalf of GTECH.

  10. The facts and circumstances surrounding GTECH's first awareness of the '354 patent, including the earliest date of awareness, any action taken by or on behalf of GTECH after becoming aware of the patent (including any attempts to design around the '354 patent), and an identification of all persons involved in such awareness and/or in any actions taken by or on behalf of GTECH.

  11. Any opinions of counsel obtained by GTECH with respect to the infringement or non-infringement, validity or invalidity, or enforceability or unenforceability of the '753 patent or the '354 patent.

  12. Communications between GTECH and any state or multi-state lottery agency concerning group participation wagering games, including any lottery or keno games with a bonus or multiplier feature.

  13. GTECH's bids or proposals to state or multi-state lottery agencies concerning group participation wagering games, including any lottery or keno games with a bonus or multiplier feature.

7

14. Communications between GTECH and any third party concerning the '753 patent or the '354 patent, including communications concerning whether GTECH or its customers or potential customers are liable for infringement of the '753 patent or the '354 patent.

15. Communications between GTECH and any third party concerning this lawsuit, including press releases, letters to customers, internal statements, or presentations to or minutes of meetings of GTECH's Board of Directors.

16. The design, operation and performance of any products or games that GTECH contends are prior art to the '753 patent or the '354 patent, including the prior art identified in GTECH's Supplemental Response to Interrogatory No. 3, dated August 7, 2006.

17. GTECH's revenue, costs, expenses, and profits or losses (gross and net), including forecasted and actual revenue, costs, expenses, and profits and losses, generated by group participation wagering games, including but not limited to Powerball Power Play (as offered by the Rhode Island, North Carolina, Wisconsin and District of Columbia lotteries), Mega Millions Megaplier (as offered by the Texas lottery), Keno Plus (as offered by the Rhode Island lottery), Quick Draw Extra (as offered by the New York lottery), Club Keno Kicker (as offered by the Michigan lottery), and Keno Spin (as offered by the District of Columbia lottery), and how such revenue, costs, expenses, and profits or losses are accounted for and reported for those games.

18. GTECH's marketing, promotion, advertising, and offering for sale of group participation wagering games, including but not limited to Powerball Power Play (as offered by the Rhode Island, North Carolina, Wisconsin and District of Columbia lotteries), Mega Millions Megaplier (as offered by the Texas lottery), Keno Plus (as offered by the Rhode

Island lottery), Quick Draw Extra (as offered by the New York lottery), Club Keno Kicker (as offered by the Michigan lottery), and Keno Spin (as offered by the District of Columbia lottery).

19. Any market research, studies, analyses, competitive analysis, sales forecasts, strategic or business plans concerning group participation wagering games, including any lottery or keno games with a bonus or multiplier feature, including but not limited to Powerball Power Play (as offered by the Rhode Island, North Carolina, Wisconsin and District of Columbia lotteries), Mega Millions Megaplier (as offered by the Texas lottery), Keno Plus (as offered by the Rhode Island lottery), Quick Draw Extra (as offered by the New York lottery), Club Keno Kicker (as offered by the Michigan lottery), and Keno Spin (as offered by the District of Columbia lottery).

20. The marketing or sale of any goods or services sold in conjunction with or incident to the sale of any group participation wagering games by GTECH, including but not limited to Powerball Power Play (as offered by the Rhode Island, North Carolina, Wisconsin and District of Columbia lotteries), Mega Millions Megaplier (as offered by the Texas lottery), Keno Plus (as offered by the Rhode Island lottery), Quick Draw Extra (as offered by the New York lottery), Club Keno Kicker (as offered by the Michigan lottery), and Keno Spin (as offered by the District of Columbia lottery).

21. GTECH's patent licensing policies and practices since 2003.

22. Any patent license agreements between GTECH and any third party concerning lottery or keno games.

23. The steps taken by GTECH, including its in-house and outside employees, to identify the location and identity of all documents and things searched, considered, identified,

reviewed, or collected in responding to each of Scientific Games' discovery requests, including all outstanding requests for production of documents and interrogatories.

24. The persons that searched, considered, identified, reviewed, or collected any documents or things in responding to each of Scientific Games' discovery requests, including all outstanding requests for production of documents and interrogatories, the dates on which each such person considered, identified, reviewed, or collected any documents or things, the location and identity of the documents and things reviewed by each such person, and the steps taken by each person in determining GTECH's responses.

25. The persons, both inside and outside employees of GTECH, who assisted in responding to each of Scientific Games' discovery requests. This subject includes all persons responsible for the identification and collection of documents and things responsive to each discovery request.

26. The policies regarding retention or destruction of documents and things at GTECH, and the identity of any relevant documents that were destroyed after the filing of the Complaint, the basis for any such destruction, and the persons responsible for destroying any such documents.

27. The existence and location of documents relating to the matters set forth in paragraphs 1 to 26.

28. The identity of persons with knowledge of the matters set forth in paragraphs 1 to 27.